

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE OF PITTSBURGH, PA., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 10 C 2382 ) |
| MANPOWER, INC.; TINA M. HARRIS; ADAN ROMO; JESSICA GOMEZ; and TERRY SIMPSON, | ) Judge Ruben Castillo ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union" or "Plaintiff") filed this action for declaratory judgment pursuant to 28 U.S.C. § 2201 (the "Act") and Federal Rule of Civil Procedure ("Rule") 57 against Manpower, Inc. ("Manpower"), Tina M. Harris ("Harris"), Adan Romo ("Romo"), Jessica Gomez ("Gomez"), and Terry Simpson ("Simpson").[1] (R. 1, Compl. ¶ 1.) National Union contends that the insurance policy it issued Manpower does not provide coverage for two pending class action lawsuits in which Manpower is being sued. (*Id.* ¶ 19.) Presently before the Court is Plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c). (R. 32, Pl.'s Mot. for J. on the Pleadings.) For the reasons stated below, the motion is denied and the case is dismissed without prejudice.

---

[1] National Union named the individual defendants Harris, Romo, Gomez, and Simpson—all of whom are named parties in lawsuits against Manpower—as defendants "solely to ensure that they will be bound by the declaration of the Court." (*Id.* ¶ 10.)

# RELEVANT FACTS[2]

This lawsuit arises out of an insurance coverage dispute between National Union and Manpower. National Union issued Commercial General Liability Policy No. GL 090-72-83 (the "Policy") to Manpower, effective March 1, 2009 to March 1, 2010. (R. 11, Def.'s Answer ¶ 18; R. 1, Compl., Ex. C.) The Policy contains the Employee Benefits Liability Insurance Endorsement (the "Endorsement"), the provisions of which Manpower contends cover two class action lawsuits in which it has been named a defendant.

## I. The Underlying Lawsuits

### A. The Illinois Lawsuit

On June 5, 2009, Manpower was named as a defendant in a class action lawsuit filed on behalf of Romo, Gomez, and Simpson in this Court, Case No. 09-cv-3429 (the "Illinois lawsuit").[3] (R. 11, Def.'s Answer ¶ 15; R. 1, Compl., Ex. B.) The Fifth Amended Complaint is brought against Manpower, Inc., Manpower of Indiana, and Kane County Personnel.[4] (*Id.*) The complaint in the case alleges that Manpower's vacation plan violates the Illinois Wage Payment and Collection Act by: (1) denying employees the right to have vacation time vest proportionally as they work, and (2) causing a forfeiture of vested vacation for employees whose employment terminates prior to the completion of a pre-designated number of hours. (R. 1, Compl., Ex. B ¶ 37.)

---

[2] The relevant facts are taken from Defendant's answer, (R. 11, Def.'s Answer to Pl.'s Compl. for Declaratory J. ("Def.'s Answer")), and exhibits attached to Plaintiff's complaint, (R. 1, Compl.), that Defendant has admitted as true in its answer. *See Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006).
[3] This lawsuit is currently pending before the Honorable Joan Lefkow.
[4] According to the complaint in the Illinois lawsuit, Kane County Personnel, Inc. is a franchise of Manpower, and Manpower of Indiana, L.P., is a subsidiary of Manpower. (R. 1, Compl., Ex. B.)

The plaintiffs seek the certification of two classes composed of current and former employees of Manpower and related companies "who terminated employment between August 17, 2002, and present and who did not receive compensation for their earned vacation time." (*Id.* ¶ 31.) As relief, the plaintiffs seek unpaid vacation pay wages owed to them, prejudgment interest on the owed vacation pay, liquidated damages; reasonable attorneys' fees and costs, and "other and further relief" the court deems appropriate. (*Id.* ¶ 38.)

### B. The California Lawsuit

On September 18, 2009, Manpower was named as a defendant in a class action lawsuit filed on behalf of Harris in state court in California, Case No. 37-2009-00098472-CU-OE-CTL (the "California lawsuit"). (R. 11, Def.'s Answer ¶¶ 11-12; R. 1, Compl., Ex. A.) The complaint alleges three causes of action: (1) that Manpower's vacation policy violates various sections of the California Labor Code; (2) that Manpower will be unjustly enriched if it is allowed to retain the wages that it allegedly wrongfully retained as a result of the enforcement of its allegedly unlawful vacation policy; and (3) that Manpower's vacation policy is "an unlawful, unfair, and/or deceptive business practice within the meaning of the California Business and Professional Code section 17200." (R. 11, Def.'s Answer ¶ 14; R. 1, Compl., Ex. A at ¶¶ 31-48.)

The plaintiff seeks certification of a class composed of "all similarly-situated former and current employees of Manpower who are or were employed by Manpower in California and who forfeited vested vacation time, and/or denied compensation in lieu thereof pursuant to Manpower's Vacation Policy." (R. 1, Compl., Ex. A ¶ 22.) The plaintiff seeks payment of wages owed, "waiting time penalties," attorneys' fees and costs, interest on all wages due, an

3

injunction enjoining Manpower from continuing its allegedly unlawful practices, and other relief the court deems proper. (*Id.* ¶¶ 34, 37-39, 48.)

On October 23, 2009, the California lawsuit was removed to the Southern District of California by Manpower.[5] (Notice of Removal, *Harris v. Manpower, Inc.*, No. 09-cv-02368 (S.D. Cal. Oct. 23, 2009), Docket No. 1.) On October 7, 2010, the district court concluded that the plaintiff's claims failed as a matter of law and granted summary judgment in favor Manpower. *Harris v. Manpower, Inc.*, No. 09-cv-2368, 2010 WL 3942781, at *4 (S.D. Cal. Oct. 7, 2010). The plaintiff's motion for reconsideration was denied on November 30, 2010. *Harris v. Manpower, Inc.*, No. 09-cv-2368, 2010 WL 4932249, at *3 (S.D. Cal. Nov. 30, 2010). The plaintiff filed a notice of appeal on December 7, 2010. (Notice of Appeal, *Harris v. Manpower, Inc.*, No. 09-cv-02368 (S.D. Cal. Dec. 7, 2010), Docket No. 54.)

## II. The Policy

The Endorsement to the Policy that National Union issued to Manpower provides that National Union "will pay [Manpower] for those sums which [Manpower] shall become legally obligated to pay as damages because of any 'claim' made against [Manpower] due to any 'Wrongful act' of [Manpower], or any other person for whose acts [Manpwer] is legally liable, in the 'administration' of the 'employee benefit program' of [Manpower]." (R. 11, Def.'s Answer ¶ 20; R. 1, Compl. ¶ 20.)

The Endorsement provides the following definitions of "administration," and "Wrongful act" as they are used in the Endorsement:

---

[5] While the proceedings in the Southern District of California were not part of the pleadings, the Court is entitled to take judicial notice of matters in the public record in resolving a motion to dismiss. *Palay v. U.S.*, 349 F.3d 418, 425 n.5 (7th Cir. 2003) (citations omitted).

"Administration" shall mean:
A. Giving counsel to employees with respect to the Employee benefit program;
B. Interpreting the Employee benefit program;
C. Handling of records in connection with the Employee benefit program;
D. Effective enrollment, termination, or cancellation of employees under the "Employee benefit program," provided all are acts which are authorized by the Named insured.

"Wrongful act" means any actual or alleged negligent act, error or omission in the "administration" of the Employee Benefit Plan.

(R. 11, Def.'s Answer ¶ 21; R. 1, Compl. ¶ 21.)

The Endorsement also provides that it is subject to a limit of liability of $1,000,000 for "each wrongful act or series of related wrongful acts." (R. 11, Def.'s Answer ¶ 30; R. 1, Compl. ¶ 21.) This limit includes a $500,000 deductible for each wrongful act or series of related acts, and applies to loss adjustment expenses. (*Id.*) National Union's liability is also subject to a $10,000,000 aggregate limit applicable to all coverages provided by the Policy. (*Id.*)

## PROCEDURAL HISTORY

On April 16, 2010, National Union filed the complaint in this action seeking a declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57. (R. 1, Compl. ¶ 1.) The complaint alleges that the Endorsement does not provide coverage for the California or Illinois class action lawsuits because: (1) "the claims alleged therein do not arise out of the 'administration' of an 'employee benefit program' as the term 'administration' is defined in the Endorsement"; (2) "the claims alleged therein are not due to a 'Wrongful act,' which is defined in the Endorsement as 'any actual or alleged negligent act, error, or omission in the 'administration' of the employee benefits Plan'"; (3) "any amounts awarded for plaintiffs' claims would not be sums for which Manpower was 'legally obligated' to pay as 'damages' because of a 'Wrongful Act'"; and (4) "[i]t is contrary to public policy to permit an employer to collect insurance coverage for the employer's

5

statutory obligation to pay wages." (*Id.* ¶¶ 22, 24, 26, 28.) In the alternative, National Union alleges that if the Court finds that the Policy provides coverage for the class action lawsuits, National Union is subject to "a single $1,000,000 limit of liability, subject to the Policy's $10,000,000 aggregate limit" because "the California and Illinois class action lawsuits involved a series of related wrongful acts." (*Id.* ¶ 31.)

On July 30, 2010, National Union moved for judgment on the pleadings pursuant to Rule 12(c). (R. 32, Pl.'s Mot. for J. on the Pleadings.) National Union contends that it is entitled to judgment on the pleadings because the Policy, by its terms, does not provide coverage for the California or Illinois lawsuits. (R. 33, Pl.'s Mem. of Law in Support of J. on the Pleadings ("Pl.'s Mem.") at 2.) In opposing National Union's motion for judgment on the pleadings, Manpower argues that the Court cannot determine "beyond doubt" that "there are no set of facts which would support coverage" in this case based on the limited record before it at this stage, and that the Court should await the final determination of the merits of the underlying suits before resolving the issue of coverage. (R. 34, Def.'s Mem. in Resp. to Pl.'s Mot for J. on the Pleadings ("Def.'s Mem.") at 3.)

## LEGAL STANDARD

Under Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. Proc. 12(c). A court reviews a Rule 12(c) motion "by employing the same standard that applies when reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Thus, the Court draws all inferences in favor of the non-moving party, *id.*, and should grant a motion for

judgment on the pleadings "only when it appears beyond a doubt" that the non-moving party "cannot prove any set of facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Supreme Laundry Serv. L.L.C. v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 746 (7th Cir. 2008) (citation omitted). A court may not consider evidence outside of the pleadings without converting the motion into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

## ANALYSIS

The Declaratory Judgment Act provides, in relevant part, that a district court "may declare the rights and other legal relations of any interested party seeking such a declaration whether or not further relief is or could be sought . . ." 28 U.S.C. § 2201(a). The purpose of the Act "is to allow for the efficient resolution of disputes by an early adjudication of the rights of the parties." *Medical Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 377 (7th Cir. 2010) (citations omitted). "By its terms . . . the Act grants the district court wide discretion in deciding whether or not to exercise this authority." *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir. 1995). The Supreme Court has consistently emphasized the discretionary nature of the Act's language:

> By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). Thus, before reaching the question of whether National Union has a duty to indemnify Manpower, the Court must first

consider whether declaratory judgment is proper at this time given "considerations of practicality and wise judicial administration." *Id.* While the underlying question of National Union's duty to indemnify Manpower is governed by Wisconsin law,[6] "[w]hether a dispute has reached the stage at which declaratory judgment under 28 U.S.C. § 2201 is appropriate is a question of federal practice." *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003).

Unfortunately for National Union, the determination of an insurer's duty to indemnify is particularly ill-suited for declaratory judgment when the insured's underlying liability suit is ongoing. Indeed, the Seventh Circuit's general rule is that "decisions about indemnity should be postponed until the underlying liability has been established." *Lear Corp.*, 353 F.3d at 583 (collecting cases and applying this rule to a declaratory judgment action); *Medical Assur. Co.*, 610 F.3d at 375 (A duty-to-indemnify claim is not "ripe until liability has been established."); *Westfield Ins. Co. v. Sheehan Const. Co., Inc.*, 575 F. Supp. 2d 956, 959-60 (S.D. Ind. 2006) (collecting cases). In *Lear Corp.*, the plaintiff sought a declaratory judgment regarding indemnity issues for an underlying environmental liability suit prior to the conclusion of that suit. 353 F.3d at 582. The Seventh Circuit affirmed the district court's determination that the dispute as to the duty to indemnify was premature while the underlying litigation was pending, noting that judicial economy is a sound consideration in the "declaratory-judgment calculus." *Id.* at 583-84. The Seventh Circuit reasoned that "[a] declaration that A must indemnify B if X comes to pass has an advisory quality; and if the decision would not strictly be an advisory opinion

---

[6] Both parties to this diversity action under 28 U.S.C. § 1332(a) agree that the Policy must be construed under Wisconsin law. (R. 34, Def.'s Mem. at 1; R. 33, Pl.'s Mem. at 6-7.)

(anathema under Article III) it could be a mistake, because it would consume judicial time in order to produce a decision that may turn out to be irrelevant." *Id.* at 583.

In this case, three interrelated factors lead the Court to apply the Seventh Circuit's general rule and find that declaratory judgment regarding whether National Union has the duty to indemnify Manpower for the California and Illinois lawsuits is premature at this time. First, and most importantly, Manpower has yet to be found liable in either the California or Illinois suits. In fact, in the California suit, summary judgment was entered *in favor of* Manpower. *Harris*, 2010 WL 3942781, at *4. In the Illinois case, the plaintiffs have filed a motion for summary judgment. (Mot. for Summ. J., *Romo v. Manpower, Inc.*, No. 09-cv-03429 (N.D. Ill. Nov. 29, 2010), Docket No. 107). Thus, any opinion by this Court could prove unnecessary–and thus a waste of judicial resources–if both underlying suits end in Manpower's favor.

The second factor influencing the Court's decision is that National Union's duty to defend Manpower in the underlying suits is not at issue; National Union seeks a declaratory judgment pertaining solely to whether it has the duty to indemnify Manpower for its potential liability in the those lawsuits. (R. 33, Pl.'s Mem. at 2; R. 34, Def.'s Mem. at 2.) This is important because while the duty to indemnify does not kick in until liability has been established, the duty-to-defend issue can be resolved based on the pleadings of the underlying lawsuit alone. *See Zavalis*, 52 F.3d at 693. Thus, some courts resolve the issue of the duty to indemnify prior to the determination of liability because they have already expended significant effort in resolving the duty-to-defend issue. *See Lear Corp.*, 353 F.3d at 583 ("[A] court that has devoted considerable effort to determining the scope of a defense obligation to resolve the parties' immediate dispute may find it prudent to specify the scope of an indemnity duty at the

same time if that subject also is in debate. Here, by contrast, the judge found that Johnson Electric did not have any duty to defend Lear in the Mississippi litigation, which made it less attractive to try to wade into the parties' debate about indemnity—and impossible for an appellate court to say that the district judge abused her discretion by steering clear for now.") In this case, like in *Lear Corp.*, because the duty to defend is not at issue, the Court declines "to wade into the parties' debate about indemnity" at this time.

The final factor supporting the Court's decision is that determining whether National Union has a duty to indemnify Manpower would require the Court to delve into unsettled Wisconsin law and possibly facts that are to be decided in the underlying lawsuits. *See Lear Corp.*, 353 F.3d at 583-84. Regarding the governing law in the case, the interpretation of the Policy involves questions that are apparently of first impression. (*See* R. 33, Pl.'s Mem. at 7 ("[T]he Court should apply Wisconsin law. There is however, very little Wisconsin case law relevant to the issues in this case concerning employee benefits liability coverage.").) National Union asks the Court to decide if the Policy as interpreted under Wisconsin state law requires it to indemnify Manpower without citing a single Wisconsin state court case.[7] In addition to this lack of clear precedent pertaining to the issues in this case, Manpower also maintains that resolution of the indemnity issue requires the determination of facts that may be at issue in the pending lawsuits.[8] (R. 34, Def.'s Mem. at 2.) Thus, despite National Union's contentions to the

---

[7] Specifically, the Court would have to determine whether conduct as alleged in the underlying lawsuits fell under the Policy after interpreting the meaning of the terms "administration," "wrongful act," and "damages" as used in the Endorsement to the Policy.

[8] Manpower asserts that "[t]he reasons why Manpower maintained that certain temporary employees were ineligible to receive vacation benefits will be the subject matter of the underlying class action lawsuits . . . and it would be premature and prejudicial to Manpower to require it to litigate those issues here in the context of Plaintiff's declaratory judgment action." (R. 34, Def.'s Mem. at 6 n.4.)

contrary, this is not a clear-cut dispute with an obvious outcome, and the Court declines to decide novel issues under Wisconsin law when Manpower's liability may never materialize.

"[C]onsiderations of practicality and wise judicial administration" lead the Court to conclude that a declaratory judgment determining whether National Union has a duty to indemnify Manpower for the California and Illinois lawsuits is premature at this time. *Wilton*, 515 U.S. at 288. As previously mentioned, this conclusion is supported by the fact that Manpower has yet to be found liable in either of the underlying lawsuits, the absence of the duty-to-defend issue, and the lack of clear precedent. "Waiting to see the outcome of the [of underlying cases] may be aggravating for [the plaintiff], but it has value from the judiciary's perspective—and that is one permissible consideration in the declaratory-judgment calculus." *Lear Corp.*, 353 F.3d at 584.

The final question before the Court is the proper disposition of this case as National Union cannot obtain a declaratory judgment regarding its duty to indemnify unless either the Illinois or California lawsuits results in liability for Manpower. While courts in the past have issued stays of the indemnity issue pending the outcome of the underlying suits, *see, e.g., Sheehan*, 575 F. Supp. 2d at 960, the Seventh Circuit has clearly instructed district courts that a dismissal without prejudice is the proper resolution of the case. *See Medical Assur. Co.*, 610 F.3d at 375 ("The district court was aware that the duty-to-indemnify claim was not ripe, but rather than dismiss that aspect of the case, it included it in the stay that it issued. The proper resolution, however, would have been to dismiss.") The Court accordingly dismisses without prejudice National Union's request for declaratory judgment regarding its duty to indemnify Manpower.

## CONCLUSION

For the foregoing reasons, Nation Union's motion for judgment on the pleadings (R. 32) is DENIED. The case is dismissed without prejudice until Manpower is found liable in either the California or Illinois lawsuit.

Entered:

Judge Ruben Castillo
**United States District Court**

**Dated:** January 12, 2011